The STATE of Ohio, Appellee,

v.

WILSON, Appellant.

[Cite as *State v. Wilson* (1996), 113 Ohio App.3d 737.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17526.

Decided Aug. 28, 1996.

738

*Maureen O'Connor*, Summit County Prosecuting Attorney, and *William D. Wellemeyer*, Assistant Prosecuting Attorney, for appellee.

*John R. Kassinger,* for appellant.

DICKINSON, Judge.

Defendant Darrell Wilson has appealed from his convictions on seven counts of receiving stolen property, nine counts of forgery, eight counts of grand theft, one count of possessing criminal tools, one count of engaging in a pattern of corrupt activity, and one count of conspiracy to engage in a pattern of corrupt activity. He has argued that the trial court (1) incorrectly overruled his motion for acquittal because there was insufficient evidence to support a conviction for engaging in a pattern of corrupt activity and conspiracy to engage in a pattern of corrupt activity; (2) incorrectly failed to instruct the jury that it could find him guilty of engaging in a pattern of corrupt activity only if it determined that proceeds or benefits derived from that activity exceeded $500; (3) incorrectly overruled his motion for acquittal because there was insufficient evidence to support his eight grand theft convictions; (4) incorrectly failed to merge the seven counts of receiving stolen property into a single count; (5) incorrectly convicted and sentenced him for forgery and grand theft because those crimes are allied offenses of similar import; (6) incorrectly overruled his motion for a mistrial because it violated his right to be present during all stages of the proceedings by communicating with the jury in his absence; and (7) violated his right to be free from double jeopardy when it convicted and sentenced him for both engaging in a pattern of corrupt activity and conspiracy to engage in a pattern of corrupt activity.

This court affirms the judgment of the trial court because (1) his convictions of engaging in a pattern of corrupt activity and conspiracy to engage in a pattern of corrupt activity were supported by sufficient evidence; (2) the trial court's failure to instruct the jury that it could find him guilty of engaging in a pattern of corrupt activity only if it determined that proceeds or benefits derived from that activity exceeded $500 was not plain error; (3) his grand theft convictions were supported by sufficient evidence; (4) the trial court correctly convicted and sentenced him on the seven counts of receiving stolen property; (5) forgery and grand theft are not allied offenses of similar import; (6) any error arising from the trial court's improper communication with the jury in defendant's absence was harmless beyond a reasonable doubt; and (7) separate convictions for engaging in a pattern of corrupt activity and conspiracy to engage in a pattern of corrupt activity do not violate defendant's right to be free from double jeopardy.

## I

Defendant was accused of participating in a scheme to defraud banks. The scheme consisted of forging the drawer's signature on a check and then either

presenting that check to a bank for immediate cash payment or depositing that check in the account of one of the participants in the scheme and later withdrawing the funds. Twelve individuals, including defendant, were charged in a secret indictment. Defendant was charged with fifteen counts of receiving stolen property, fifteen counts of grand theft, seventeen counts of forgery, one count of engaging in a pattern of corrupt activity, and one count of conspiracy to engage in a pattern of corrupt activity. He and codefendant Clinton Nelson were tried to a jury beginning September 18, 1995. On September 25, 1995, the jury found him guilty of seven counts of receiving stolen property, nine counts of forgery, eight counts of grand theft, one count of possessing criminal tools, one count of engaging in a pattern of corrupt activity, and one count of conspiracy to engage in a pattern of corrupt activity. He timely appealed to this court.

Twenty-one of the twenty-four counts of receiving stolen property, forgery, and grand theft that defendant was convicted of were connected to a series of checks drawn on the account of Sharon Huntley. Defendant was convicted of one count of receiving stolen property, one count of forgery, and one count of grand theft for each of seven checks drawn on Huntley's account. Each check was allegedly signed by Huntley and was made payable to Richard Bryant. Huntley, however, denied having drafted checks payable to Richard Bryant and, in fact, testified that those checks had been stolen from her during March 1994. A document examiner from the Bureau of Criminal Identification and Investigation compared the handwriting on six of the checks to known handwriting samples of defendant and Richard Bryant and concluded that defendant wrote the drawer's signatures and the other information on the front of the checks and Richard Bryant endorsed the back of the checks. The document examiner did not compare the writing on the seventh check to the parties' known handwriting samples. The checks were presented at different branches of Bank One in Summit County on October 28, 1994, and on October 31, 1994. On the first date, checks in the amounts of $585, $610, $575, and $650 were presented for immediate cash payment. On the latter date, a check in the amount of $650 was deposited in Richard Bryant's account and two checks in the amount of $650 were presented for immediate cash payment. The bank honored all of the checks.

Defendant was also convicted of one count of forgery and one count of grand theft in connection with a check drawn on the account of Deedra Bryant. That check was made payable to "Tyrone Stevens." The check was cashed on November 11, 1994, by a man claiming to be Tyrone Stevens, who had an Ohio driver's license in that name. The real Tyrone Stevens, however, was incarcerated in a state prison on that date. Evidence was presented at trial that defendant went by the alias "Tyrone Stevens" and had an Ohio driver's license in that name with his own picture on it. That driver's license was confiscated by police during

a search of Richard Bryant's apartment. The document examiner from the Ohio Bureau of Criminal Identification and Investigation compared the handwriting on the "Tyrone Stevens" driver's license to the endorsement on the back of the Deedra Bryant check and concluded that they were written by the same person.

The remaining forgery count on which defendant was convicted was related to the signature on the "Tyrone Stevens" driver's license. Defendant was also convicted of possessing criminal tools for having had that driver's license under his control.

## II

### A

Defendant's first assignment of error is that the trial court incorrectly overruled his motion for acquittal because there was insufficient evidence to convict him of engaging in a pattern of corrupt activity, a violation of R.C. 2923.32(A)(1), and conspiracy to engage in a pattern of corrupt activity, a violation of R.C. 2923.32(A)(1) and 2923.01(A)(2). Crim.R. 29(A) provides that a motion for acquittal shall be granted if the evidence is insufficient to sustain a conviction. In determining whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

Defendant has argued that there was insufficient evidence to convict him of engaging in a pattern of corrupt activity and conspiracy to engage in a pattern of corrupt activity because the state did not prove that he was employed by or associated with an enterprise that was separate and apart from the pattern of corrupt activity in which it allegedly engaged. Defendant's argument derives from a discussion in *United States v. Turkette* (1981), 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246, about what the federal government must prove in order to sustain a conviction under the Racketeer Influenced and Corrupt Organizations Act, Section 1961 *et seq.*, Title 18, U.S.Code:

" * * * In order to secure a conviction under RICO, the Government must prove both the existence of an 'enterprise' and the connected 'pattern of racke-

teering activity.' The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government." (Citations omitted.) 452 U.S. at 583, 101 S.Ct. at 2528–2529, 69 L.Ed.2d at 254–255.

Pursuant to R.C. 2923.32(A)(1), a defendant may be convicted of conspiracy to engage in a pattern of corrupt activity and engaging in a pattern of corrupt activity if the state proves that he or she was part of an "enterprise" that engaged in the underlying offenses. To meet this burden, the state must establish that the defendant was employed by or associated with an "enterprise." Under the statute, an "enterprise" is "any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity." R.C. 2923.31(C). It includes both licit and illicit enterprises. *Id.* Ohio courts, unlike their federal counterparts, have not defined "enterprise" in such a way that a defendant may be convicted of those offenses only if he or she was associated with an "enterprise" that had an existence separate and apart from the corrupt activity. *State v. Habash* (Jan. 31, 1996), Summit App. No. 17073, unreported, 1996 WL 37752. Rather, a defendant may be convicted of those offenses if he was employed by or associated with an entity that meets the statutory definition of an "enterprise." See *id.*

Since Ohio courts have not required that an "enterprise" have an existence separate and apart from the underlying corrupt activity, defendant's convictions were supported by sufficient evidence. Defendant's first assignment of error is overruled.

## B

■ Defendant's second assignment of error is that the trial court incorrectly failed to instruct the jury that it could find him guilty of engaging in a pattern of corrupt activity only if it determined that proceeds or benefits derived from that activity exceeded $500. In support of this argument, defendant has relied on the

definition of "corrupt activity" found at R.C. 2923.31(I). Under that definition, a defendant engages in a corrupt activity if the value of proceeds or benefits derived from commission of one of the predicate offenses, individually or in combination with the value of proceeds or benefits derived from commission of another predicate offense, exceeds $500:

"(I) 'Corrupt activity' means engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in any of the following:

" * * *

"(2) Conduct constituting any of the following:

" * * *

"(b) Any violation of section * * * 2913.02 [theft], * * * 2913.31 [forgery] * * * [or] 2913.51 [receiving stolen property] * * * of the Revised Code when the proceeds of the violation, the payments made in the violation, the amount or claim for payment or for any other benefit that is false or deceptive and that is involved in the violation, or the value of the contraband or other property illegally possessed, sold, or purchased in the violation exceeds five hundred dollars, or any combination of violations of those sections when the total proceeds of the combination of violations, payments made in the combination of violations, amount of the claims for payment or for other benefits that is false or deceptive and that is involved in the combination of violations, or value of the contraband or other property illegally possessed, sold, or purchased in the combination of violations exceeds five hundred dollars[.]"

The trial court in this case instructed the jury that a "pattern of corrupt activity" consists of two or more incidents of "corrupt activity," or at least two violations of one of the statutes enumerated in R.C. 2923.31(I)(2)(b). It did not, however, instruct the jury on the statute's requirement that the proceeds from a violation of an enumerated statute must equal a certain amount for that violation to constitute a "corrupt activity":

"Now, you must further find that the pattern of corrupt activity includes at least two or more incidents of corrupt activity, such as the commission of a theft or grand theft and/or a forgery and/or receiving stolen property. And that is why I instructed you that you should deliberate as to those charges first."

Defendant did not request an instruction on the monetary requirement or object to the instruction as it was given. He thus waived any right to assert as error the trial court's failure to give that instruction except to the extent that it constituted plain error. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, syllabus. Plain error exists if it can be said that, but for the error, the outcome of the trial would have been otherwise. *Id.*

Defendant was convicted of seven counts of receiving stolen property, forgery, and grand theft in connection with the presentation of seven checks drawn on the account of Sharon Huntley at different branches of Bank One in Summit County. One check in the amount of $650 was deposited in Richard Bryant's account and the remaining six checks in the amounts of $585, $610, $575, $650, $650, and $650 were presented for immediate cash payment. Defendant was also convicted of one count of forgery and one count of grand theft in connection with the presentation for immediate cash payment of the check drawn on the account of Deedra Bryant. That check was in the amount of $450.

Since all but one check that served as the bases for the underlying offenses of receiving stolen property, forgery, and grand theft had values of more than $500, the jury could not have found that the monetary requirement was not met. The trial court's failure to give that instruction, therefore, was not plain error. Defendant's second assignment of error is overruled.

## C

Defendant's third assignment of error is that the trial court incorrectly overruled his motion for acquittal because there was insufficient evidence to convict him on the eight counts of grand theft. This court laid out the standard it must apply to determine whether a conviction was supported by sufficient evidence in its discussion of defendant's first assignment of error.

Defendant has argued that there was insufficient evidence to support his grand theft convictions because the state did not establish that he presented the checks to the banks or received any proceeds from their presentment. Defendant was charged with violating R.C. 2913.02(A)(3) (theft by deception):

"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

" * * *

"(3) By deception[.]"

This offense constituted grand theft because defendant had previously been convicted of two or more theft offenses. R.C. 2913.02(B).

The state presented evidence that seven checks drawn on the account of Sharon Huntley and one check drawn on the account of Deedra Bryant were presented to different branches of Bank One in Summit County for deposit into the account of Richard Bryant or for immediate cash payment. According to Huntley, the seven checks written on her account were stolen from her. The document examiner from the Bureau of Criminal Identification and Investigation

opined that the writing on the face of six of the checks was defendant's and the endorsements on the back were Richard Bryant's. The document examiner did not compare the writing on the seventh check to the known handwriting samples. That check and the handwriting samples, however, were received into evidence as exhibits and thus were available to the jury for comparison.

Although there was no evidence that defendant physically presented the Sharon Huntley checks to the bank or actually received any proceeds from their presentment, the state did introduce sufficient evidence for the jury to find that he aided and abetted another to commit the offense by forging Sharon Huntley's signature on the face of the checks. As an aider and abetter, defendant could be prosecuted and punished as if he were the principal offender. R.C. 2923.03(F).

As for the Deedra Bryant check, there was evidence that defendant presented the check to the bank for immediate cash payment and received the funds from the cashing of that check. The check was made payable to "Tyrone Stevens." A person using that name and carrying a driver's license in that name cashed the check. Several witnesses testified that defendant used the alias "Tyrone Stevens" and had a driver's license in that name with his own picture on it. That license was confiscated by police during a search of Richard Bryant's apartment.

Defendant's grand theft convictions were supported by sufficient evidence. His third assignment of error is overruled.

## D

Defendant's fourth assignment of error is that the trial court incorrectly failed to merge the seven counts of receiving stolen property into a single count. Defendant was charged with a separate count of receiving stolen property for each of the seven Sharon Huntley checks. He has argued that those counts should have been merged because Sharon Huntley's testimony indicated that the checks were stolen from her at the same time and thus were most likely received by him at the same time. For support, he has relied on this court's holding in *State v. Wilson* (1985), 21 Ohio App.3d 171, 172, 21 OBR 182, 183, 486 N.E.2d 1242, 1244, that a trial court must merge multiple counts of receiving stolen property into a single count if the defendant received, retained, or disposed of the items of property in a single transaction or occurrence.

In this case, no evidence was presented that would definitively establish whether defendant received the checks in one transaction or in more than one transaction. The fact that Huntley testified that those checks were stolen from her at the same time does not prove that defendant received them at the same time.

Even assuming that defendant did receive the checks at the same time, the trial court should not have merged those counts since the evidence indicated that those checks were separately retained and disposed of. *State v. McVay* (Apr. 23, 1986), Summit App. No. 12437, unreported, 1986 WL 4881. The checks were presented at different branches of Bank One in Summit County on October 28, 1994, and on October 31, 1994. They were not presented to the bank in one transaction. Defendant's fourth assignment of error is overruled.

## E

■ Defendant's fifth assignment of error is that the trial court incorrectly failed to merge the forgery counts with the grand theft counts because they were allied offenses of similar import. For each of the seven Sharon Huntley checks and the Deedra Bryant check, defendant was charged with one count of forgery and one count of grand theft. He has argued that the forgery and grand theft counts for each of those checks should have been merged because they were "integral parts of the same transaction."

Forgery and grand theft, however, are not allied offenses of similar import. *State v. Habash, supra.* The commission of one crime does not result in the commission of the other. *Id.* The trial court, therefore, correctly convicted defendant on those separate counts. Defendant's fifth assignment of error is overruled.

## F

■ Defendant's sixth assignment of error is that the trial court incorrectly overruled his motion for a mistrial because it had communicated with the jury after it had begun its deliberations without defendant being present. The jury submitted seven requests to the trial court:

"(1) To be charged with forgery must it be mandated that some portion of the check has to be actually written by the defendant?

"(2) Can the jury be provided with information as to why there is no count (charge) re: check # 241 on the 'Mary English' account. Testimony from [the document examiner] states that Clinton Nelson endorsed this check.

"(3) Also why is there no count (charge) re: check # 974 on the account of 'Matilda Collins.' Testimony from [the document examiner] states that Clinton Nelson wrote this check.

"(4) Is this jury to consider counts 956, 957, 958, 959, 960, 961 described on supplement 3 for a verdict?

"(5) Need clarification re: completion of verdict forms. Also questions re: counts re: 'conspiracy' and 'pattern of corrupt activity.'

"(6) Should we have 'counts' for Darrell Wilson for the charges of: 'engaging in a pattern of corrupt activity' and 'conspiracy to engage in a pattern of corrupt activity?'

"(7) Request for flip charts marked as evidence."

The court reviewed the requests with counsel for defendant and the prosecutor and responded to them by writing an answer to some of the questions on the bottom of the paper the jury had written its questions on. A court reporter was not present when the court reviewed the requests with counsel or responded to them. After the court went back on the record, counsel for defendant moved the court for a mistrial because defendant had not been present when the court reviewed and responded to the jury's requests. The record does not indicate that counsel for defendant objected at the time the court communicated with the jury. The court denied the motion for a mistrial.

A criminal defendant has the right to be present when a trial court communicates with a jury regarding the court's instructions. *State v. Abrams* (1974), 39 Ohio St.2d 53, 68 O.O.2d 30, 313 N.E.2d 823, paragraph one of the syllabus. A trial court's communication with the jury out of the presence of the defendant does not mandate reversal, however, if it did not prejudice his right to a fair trial. *Id.* at paragraph two of the syllabus.

In this case, defendant was not prejudiced by the court's communication with the jury. Questions two, three, and four applied only to codefendant Clinton Nelson.[1] The court did not respond to question five. It responded to question six by telling the jury that it should consider all the indictments and to question one by telling the jury that it had already been instructed on the elements of forgery. Finally, it responded to the jury's request for the flip chart by informing it that it had all the exhibits that had been received into evidence.

Since the court did not give any additional instructions to the jury or make any substantive comments on the law, its error in communicating with the jury in defendant's absence was harmless beyond a reasonable doubt. *Id.* at 56, 68 O.O.2d at 32, 313 N.E.2d at 825–826. Defendant's sixth assignment of error is overruled.

### G

■ Defendant's seventh assignment of error is that his separate convictions and sentences for engaging in a pattern of corrupt activity and conspiracy to

---

1. Question four referred to a supplemental indictment that charged Nelson with additional offenses.

engage in a pattern of corrupt activity violated his right to be free from double jeopardy. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects a defendant from being punished multiple times for the same offense. *Missouri v. Hunter* (1983), 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535, 542. Consistent with double jeopardy protections, a defendant may be sentenced for two or more offenses if the legislature intended to authorize cumulative punishments for those offenses. 459 U.S. at 366, 103 S.Ct. at 678, 74 L.Ed.2d at 542. This is true regardless of whether the statutes the defendant is accused of violating proscribe the "same" conduct within the meaning of *Blockburger v. United States* (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. *Hunter,* 459 U.S. at 368, 103 S.Ct. at 679, 74 L.Ed.2d at 544.

In the case of the offenses of engaging in a pattern of corrupt activity and conspiracy to engage in a pattern of corrupt activity, the General Assembly has specifically provided for separate punishments for those crimes. See *State v. Habash* (Jan. 31, 1996), Summit App. No. 17071, unreported, 1996 WL 37747. R.C. 2923.32(B)(1) provides:

" * * * Notwithstanding any other provision of law, a person may be convicted of violating the provisions of this section as well as of a conspiracy to violate one or more of those provisions under section 2923.01 of the Revised Code."

Since the legislature intended to authorize cumulative punishments for those offenses, defendant's right to be free from double jeopardy was not violated by his separate convictions and sentences for those crimes. *State v. Conley* (July 15, 1991), Preble App. No. CA90–11–023, unreported, 1991 WL 129796. Defendant's seventh assignment of error is overruled.

Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

REECE, P.J., and SLABY, J., concur.